IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARON A. PROPER,           )
                            )
        Plaintiff,           )    Civil Action No. 10-238 Erie
                            )
    v.                      )
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security, )
                            )
        Defendant.          )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

### I.      INTRODUCTION

Sharon A. Proper ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* Plaintiff filed her application on March 31, 2008 alleging disability since October 22, 2007 due to back and leg impairments (AR 116-118; 131; 135).[1] Her application was denied, and following a hearing before an administrative law judge ("ALJ") held on November 2, 2009 (AR 22-59), the ALJ found that Plaintiff was not entitled to a period of disability or DIB under the Act (AR 9-18). Plaintiff's request for review by the Appeals Council was denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 9], will be designated by the citation "(AR ___)".

## II. BACKGROUND

Plaintiff was 36 years old on the date of the ALJ's decision and has a high school education earned through a G.E.D. (AR 16; 29). She has past relevant work experience as a cashier, laborer, light mechanic and parts driver (AR 136).

Historically, Plaintiff suffered a work-related back injury in June 2005 (AR 36; 135; 218). An MRI of her lumbosacral spine dated June 26, 2005 revealed evidence of a moderate central disc protrusion at the L5-S1 level with minimal nerve root impingement and a small disc protrusion at the L4-L5 level with minimal nerve root impingement without stenosis or neural foraminal narrowing (AR 201; 271). Plaintiff was treated with medications and physical therapy, but continued to suffer back pain (AR 349-363). In August 2006 she was restricted to light duty work by her physician (AR 351).

On October 11, 2006, an MRI revealed the same disc herniations as seen in the June 2005 MRI, but there was a significant increase in the herniation at the L5-SI level, with some impingement on both sides of the descending nerve roots (AR 296). Plaintiff was referred for a pain management evaluation on October 17, 2006 and she was assessed with lumbar radiculopathy and lumbar disc displacement (AR 201-202).

Plaintiff was also referred to a neurosurgeon for evaluation and on November 6, 2006, Matt El-Kadi, M.D., Ph.D. performed a left L5-S1 hemilaminectomy/microdiskectomy (AR 215). At her post-operative visit on November 16, 2006, Plaintiff reported a 90 percent improvement in her symptoms (AR 215). Dr. El-Kadi reported that her physical examination was unremarkable and he was "very pleased" with her progress (AR 215). Plaintiff was to undergo six weeks of physical therapy and then return to work without restrictions (AR 215).

Plaintiff was followed post-surgery by Bernard Proy, M.D., her primary care physician. On December 20, 2006 Dr. Proy concluded that Plaintiff could perform sedentary work (AR 330). On December 27, 2006, Mary Evelyn Pifer, RPA-C from Dr. Proy's office, opined that Plaintiff had no work restrictions (AR 331).

On January 2, 2007, Plaintiff reported to Dr. Proy that she had completed her physical therapy and was performing home exercises (AR 327). She complained of some back

discomfort with occasional tingling in the left lower extremity and persistent numbness of her right lower extremity (AR 327). On physical examination, Dr. Proy found her back had improved range of motion and her gait was "okay" (AR 327). She was to return to a work-hardening program with limited restrictions (AR 327).

On March 2, 2007 Plaintiff reported to Dr. Proy that she experienced back discomfort while shoveling snow (AR 319). Dr. Proy noted that she was no longer employed and was thinking of switching to a non-physical office job (AR 319). On physical examination, Dr. Proy found Plaintiff had a "fair-to-full" range of motion and there was no neurological change (AR 319). Plaintiff had no complaints on March 21, 2007 and April 30, 2007 relative to her back and her physical examinations were unremarkable (AR 324; 326).

On October 30, 2007, Plaintiff complained of back pain and Dr. Proy found no evidence of numbness, weakness or paresthesias of her legs on physical examination (AR 321). He prescribed a muscle relaxant (AR 321). On November 13, 2007, Dr. Proy noted that her condition had improved and she was experiencing less back pain, but neurologically she had the "usual leg weakness" (AR 319). Dr. Proy increased her muscle relaxant dosage (AR 319).

On February 27, 2008, Plaintiff returned to Dr. Proy's office and complained of increased back pain and requested pain medication in order to manage her acute symptoms (AR 318). Jared Varner, PA-C, noted that Plaintiff had a "chronic history of back pain, comp related, for quite some time" (AR 318). On physical examination, Plaintiff walked normally without apparent discomfort but seemed "stiff" when raising to sit on the exam table (AR 318). She complained of tenderness to the left SI joint area on palpation with no significant tenderness to the right (AR 318). She exhibited +2 reflexes in her lower extremities bilaterally, had negative straight leg raise bilaterally, and her light touch sensation was intact bilaterally (AR 318). Mr. Varner assessed her with "back pain, musculoskeletal flare" and prescribed Flexeril, ibuprofen and Tylenol for breakthrough pain (AR 318). On March 12, 2008, Plaintiff complained of back pain and left leg weakness with sciatia, and numbness down her right leg (AR 316). Dr. Proy referred her for back rehabilitation (AR 316).

On March 14, 2008, Plaintiff was evaluated by Sherrie Walker, D.O. for her complaints of back pain (AR 313). Plaintiff reported that following her back surgery in November 2006, she worked part time as a cashier from July 2007 until October 2007, but quit working because the job "aggravated her back" (AR 313). Plaintiff stated that she exercised regularly, performed stretching exercises at least twice a day and was an "avid" walker (AR 313). On physical examination, Dr. Walker noted Plaintiff was in no acute distress (AR 313). She found Plaintiff had "quite a bit of somatic changes" (AR 313). She had a positive left standing flexion test and a positive left seated flexion test (AR 313). Dr. Walker noted that Plaintiff had a prominent short right leg (AR 313). She diagnosed Plaintiff with somatic dysfunction of the cervical spine, thoracic spine, lumbar spine, pelvis, sacrum and lower extremity (AR 313). She also diagnosed Plaintiff with "NSAID" induced gastritis (AR 313). Dr. Walker performed osteopathic manipulation and Plaintiff reported immediate relief in her left leg symptoms (AR 313). Her medications were continued but Dr. Walker decreased her ibuprofen, and added Zantac for her complaints of heartburn (AR 313).

Plaintiff returned to Dr. Walker on April 2, 2008 and reported improvement in her back pain (AR 307). Although Plaintiff reported some leg weakness, she had only occasional back pain that was controlled (AR 307). She indicated she was performing stretching exercises that improved her muscle spasms (AR 307). She reported that her pain was moderately alleviated by massage therapy and totally alleviated by muscle relaxants (AR 307). Dr. Walker noted Plaintiff was in no apparent distress, was fully alert and oriented, appeared healthy and walked normally (AR 307). She found Plaintiff had negative standing flexion, which was an improvement from her last visit (AR 307). Plaintiff's sensation was intact to light touch and pinprick, her Achilles and patellar "DTR's" were brisk and symmetrical, and she exhibited good mobility of all extremities, but had bilateral plantar tenderness (AR 307). Plaintiff was assessed with backache unspecified and fibromatosis plantar fascia (AR 307). Dr. Walker performed manipulative therapy on her foot and recommended that she continue stretching exercises at home and utilize arch support inserts (AR 307). On April 30, 2008 Plaintiff reported a 70 percent improvement in her back pain and was observed walking with a normal gait (AR 301). Although Dr. Walker

4

found some spasm of the right thoracic paraspinal muscles, Plaintiff's spine strength was "good," her sensation was intact, she exhibited good mobility in all extremities, and she had full (5/5) or almost full (4/5) leg strength (AR 301). Dr. Walker continued her medication regimen (AR 304).

On June 23, 2008, Dilip S. Kar, M.D., a state agency reviewing physician, reviewed the medical evidence of record and opined that Plaintiff could perform light work with postural limitations (AR 368-374). In support of this finding, Dr. Kar summarized the medical evidence, and noted that Plaintiff's daily activities mentioned throughout the record were not significantly limited in relationship to the symptoms alleged (AR 373). He further noted that Plaintiff's symptoms significantly improved following surgery, she was not currently attending physical therapy, did not require an assistive device to walk, and had not been prescribed narcotic pain medication (AR 373). Based on the evidence of record Dr. Kar found Plaintiff's statements relative to her symptoms partially credible (AR 374).

On July 23, 2008, Plaintiff presented with back pain that was "70 percent improved," but was aggravated by activity, driving, lifting, pulling, pushing, squatting, or standing more than one hour (AR 396). She further complained of right leg numbness and an "electrical hum" through her left leg (AR 396). On physical examination, Dr. Walker noted that Plaintiff walked with a normal gait (AR 396). She found some spasm of the right thoracic paraspinal muscles, but Plaintiff's spine strength was "good," her sensation was intact, she exhibited good mobility in all extremities, and she had full (5/5) or almost full (4/5) leg strength (AR 396). She noted that Plaintiff's mood was pleasant and her affect was normal (AR 396). She was diagnosed with intervertebral disc disorder with lumbar myelopathy; disc disorder "other" and unspecified lumbar region; and neuralgia neuritis and radiculitis unspecified (AR 397). Dr. Walker added Neurontin to her medication regimen (AR 397). Plaintiff continued to complain of back pain on July 31, 2008, but reported that she was able to get work done around the house with proper rest at night (AR 401). Dr. Walker found tenderness and muscle spasm, and performed manipulation therapy (AR 401). She decreased her Neurontin dosage (AR 402).

Plaintiff returned to Dr. Walker on August 25, 2008 and reported an 80 percent improvement in her back pain (AR 404). Plaintiff was pleasant and in no apparent distress, but

5

was slow to stand from a seated position (AR 405). Dr. Walker noted that Plaintiff's symptoms had "improved with therapy to a steady level providing quality of life" (AR 404). Plaintiff claimed that her back pain was aggravated by activity but not by walking (AR 404). On physical examination, Dr. Walker found some tenderness and muscle spasm present (AR 405). She performed manipulation therapy and continued her medication regimen A(R 405).

Plaintiff had no complaints of back pain when seen on September 4, 2008 (AR 407). On September 24, 2008, Plaintiff presented with back pain but reported that it was 80 percent improved and moderately alleviated with heat, home exercise, massage therapy, medication and rest (AR 410). Plaintiff further reported sleeping better (AR 410). Her physical examination remained unchanged from her August 25, 2008 visit (AR 411). Dr. Walker performed manipulation therapy and continued her medications (AR 411).

Plaintiff presented for a general physical examination on October 24, 2008 and complained of headaches interfering with her speech and ability to perform tasks (AR 414). She further reported muscle spasms, stiffness and tenderness (AR 414). On physical examination, Dr. Walker reported Plaintiff appeared healthy and walked with a normal gait (AR 415). Dr. Walker found muscle spasms throughout Plaintiff's back and pelvic region, as well as tenderness on palpation (AR 418). Plaintiff exhibited a full range of neck and spinal motion with no pain, her spinal contour was normal, and she had a full range of motion bilaterally in her upper extremities (AR 415). Plaintiff's left lower extremity reflexes were brisk and normal, her right lower extremity reflexes were absent, her upper extremity reflexes were diminished bilaterally, and she exhibited good mobility of all extremities (AR 415). Dr. Walker reported that Plaintiff's mood and affect were normal, she was alert and oriented, her memory was intact, and her speech was fluent with no aphasia (AR 415). Dr. Walker assessed Plaintiff with migraine variants and speech disturbance; neuralgia neuritis and radiculitis unspecified; disc disorder other and unspecified, lumbar region; lumbar intervertebral disc disorder with myelopathy; and joint and ankle pain (AR 418). She discontinued the daytime dose of Neurontin and encouraged Plaintiff to engage in water aerobics (AR 415). Dr. Walker performed manipulation therapy and Plaintiff reportedly felt better thereafter (AR 418).

Plaintiff's back complaints remained the same at her November 2008 and December 2008 office visits, although she reported an 80 percent improvement in her pain (AR 421-430). On November 7, 2008 she complained of increased pain after engaging in yard work (AR 422). Dr. Walker advised her to continue her exercises and to utilize "caution with lawn work" (AR 422). On December 3, 2008, Plaintiff reported that her mood had improved after she discontinued the Neurontin (AR 428). Dr. Walker found tenderness and muscle spasm on physical examination and performed manipulation therapy which improved Plaintiff's symptoms (AR 429). On December 9, 2008, Plaintiff's gynecologist prescribed Prozac for Plaintiff's complaints of moodiness (AR 377).

Plaintiff was seen by Ms. Pifer on April 22, 2009 for her complaints of severe back pain after engaging in "a lot of standing" over the weekend (AR 437). Physical examination revealed tenderness on palpation, and Plaintiff had a positive straight leg raise test, but her sensation was intact (AR 438). She was prescribed Darvocet (AR 438). On April 29, 2009, Plaintiff reported that her symptoms had improved and she suffered only mild back pain (AR 440). Her physical examination remained unchanged and her medications were continued (AR 441).

On July 27, 2009, Plaintiff presented with complaints of depression secondary to financial stress (AR 445). She reported frequent crying and stress, but denied difficulty concentrating, fatigue, suicidal thoughts or excessive worry (AR 445). Plaintiff further denied any musculoskeletal complaints (AR 445). On mental status examination, Dr. Proy reported Plaintiff's mood and affect were normal, her speech was spontaneous, her thought process was normal and her memory was intact (AR 446). He found Plaintiff had no delusions, hallucinations, obsessions, or suicidal thoughts (AR 446). Plaintiff's attention span and concentration were normal and her judgment and insight were intact (AR 446). She was diagnosed with depressive disorder not "[e]lsewhere" specified and prescribed Prozac (AR 446).

On August 6, 2009, Ms. Pifer authored a letter addressed "[t]o whom it may concern" and stated "[patient] is permanently disabled" (AR 447).

On August 26, 2009, Plaintiff was seen Ms. Pifer and complained of depression, but believed her symptoms were caused by hormonal changes (AR 449). She denied any associated

anxiety, insomnia or difficulty concentrating (AR 449). Plaintiff also requested pain medication, although she had no musculoskeletal complaints (AR 449). On physical examination, Plaintiff was observed limping and she appeared in moderate discomfort (AR 450). Ms. Pifer found she had a positive straight leg raise test on the right and tenderness in her right low back and hip (AR 450). On mental status examination, she found Plaintiff's mood and affect were normal, her speech was spontaneous, her thought processes were normal, her memory, judgment and insight were all intact, and she denied any suicidal thoughts (AR 450). Ms. Pifer further found Plaintiff's attention span and concentration were normal (AR 450). She assessed Plaintiff with a "backache" unspecified and depressive disorder not elsewhere specified (AR 450).

Plaintiff and William Reed, Ph.D., a vocational expert, testified at the hearing held by the ALJ on November 2, 2009 (AR 22-59). Plaintiff testified that she stopped working in October 2007 due to sciatica in her back (AR 30). Plaintiff described her symptoms of depression, but acknowledged that she had not sought mental health treatment (AR 40-41). She testified that Prozac alleviated her symptoms and that it was her physical impairments that prevented her from working, namely, fatigue, back pain and right leg numbness (AR 33; 41). She indicated that her pain was constant, but she only took pain medication "when absolutely necessary" because she cared for her minor child (AR 34). Her medication regimen at the time of the hearing consisted of an over the counter pain medication, a stomach medication, Prozac and an allergy medication (AR 35). Plaintiff stated that approximately one month prior to the hearing she took a low dose of Darvocet for one week due to back pain (AR 35). Plaintiff performed stretching exercises on a daily basis and avoided exerting herself (AR 37). Plaintiff claimed that she needed to lie down daily for at least one hour in order to manage her pain and had trouble sleeping at night (AR 45).

Plaintiff testified that she had a driver's license but was limited in her ability to drive due to right leg numbness (AR 29; 38). She stated she could sit for at least one hour, stand for at least 15 to 20 minutes, walk for at least 20 to 25 minutes, and lift up to 20 pounds (AR 38-40). Plaintiff further stated that she had problems with climbing, squatting, twisting and bending (AR 39-40). Plaintiff testified that she was able to perform household chores such as folding laundry, cooking, washing the dishes, running the vacuum cleaner and grocery shopping (AR 43-44).

Plaintiff further testified that she watched television, read, quilted, enjoyed crossword puzzles and had a "good social life" (AR 46). She further stated that she gave "cooking seminars" to her daughter's girl scout troop in her home (AR 46-47). Plaintiff acknowledged that she stayed fairly active (AR 47).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was limited to sedentary work with a sit/stand option involving no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling (AR 55). That individual would further be unable to work in temperature extremes, operate foot controls, or work in proximity to occupational hazards such as dangerous machinery, open flames, unprotected heights, ladders and scaffolds (AR 55). The vocational expert testified that such an individual could perform the sedentary positions of a surveillance system monitor, sedentary assembler and sedentary laborer (AR 56).

Following the hearing, the ALJ issued a written decision concluding that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 9-18). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-5). She subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3rd Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision

nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). In order to be entitled to DIB under Title II, a claimant must additionally establish that her disability existed before the expiration of her insured status. 42 U.S.C. § 423(a), (c); *Matullo v. Bowen*, 926 F.2d 240, 244 (3rd Cir. 1990) (claimant is required to establish disability prior to expiration of insured status); *see also* 20 C.F.R. § 404.131. The ALJ found that Plaintiff met the disability insured status requirements of the Act through the date of his decision, January 8, 2010 (AR 9). Therefore, Plaintiff must show that she was disabled on or prior to that date for purposes of entitlement to disability insurance.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the

> claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. Id. If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that Plaintiff met the insured status requirements of the Act through the date of his decision and that she had not engaged in substantial gainful activity since October 22, 2007 (AR 11). The ALJ further found that her degenerative disc disease of the lumbar spine was a severe impairment, but determined at step three that she did not meet a listing (AR 11-12). The ALJ found that she was able to perform sedentary work but was limited to no more than occasional climbing of ramps, stairs, ladders, ropes or scaffolds, or balancing, stooping, kneeling, crouching and crawling (AR 12). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 17). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff challenges the ALJ's step three determination which requires a determination of whether a claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1, 20 C.F.R. § 416.920(d). The Listing of Impairments describes impairments which preclude an adult from engaging in substantial gainful activity without regard to his or her age, education or work experience. *Knepp v. Apfel*, 204 F.3d 78, 85 (3rd Cir. 2000). A claimant who meets or medically equals all of the criteria of an impairment listed in Appendix 1 is *per se* disabled and no further analysis is necessary. *Burnett v. Comm'r*, 220 F.3d 112, 119 (3rd Cir. 2000). The burden is on the claimant to present evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3rd Cir. 1992).

The ALJ concluded that Plaintiff's impairments did not meet or medically equal the Listing of Impairments set forth in the regulations, finding that no treating or examining physician offered an opinion or reported findings of listing level severity (AR 12). Plaintiff argues in a conclusory fashion that she "easily meets" the criteria for Listing 1.04 (Disorders of

the spine) and Listing 12.04 (Affective Disorders). *See* [ECF No. 12] Plaintiff's Brief p. 8. Section 1.04 requires:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine); or
>
> B. Spinal arachnoiditis … or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication ….

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

Plaintiff does not point to any specific record evidence in support of her contention that she met all the criteria for Listing 1.04. Indeed, the medical evidence reveals that substantial evidence supports the ALJ's conclusion that Plaintiff does not satisfy the criteria for Listing 1.04(A). At Plaintiff's post-operative check up on November 6, 2006, her nerve root compression issues had resolved (AR 215). There are no diagnostic studies post-surgery demonstrating any nerve root compression, and Plaintiff's motor examination and reflexes were generally reported as intact (AR 301; 307; 318; 324; 326; 396; 415). As discussed by the ALJ, at Plaintiff's physical examination on November 16, 2006, Plaintiff reported a 90 percent improvement in her symptoms and Dr. El-Kadi reported that Plaintiff's physical examination was unremarkable (AR 15; 215). The ALJ observed that Plaintiff's physical examinations revealed either an improved range of motion or no limitation in the motion of her spine (AR 15; 301; 319; 327; 396; 415). The ALJ examined Plaintiff's physical therapy treatment notes, and observed that on November 20, 2006 Plaintiff was "moving fluidly" and reported minimal pain (AR 13; 222). The ALJ noted that as of January 2007 the Plaintiff reported that her gait was "okay" (AR 15; 327). He also noted that the Plaintiff testified she could walk for at least 20 to

12

25 minutes (AR 13; 38-40). The ALJ observed that a treatment noted dated October 30, 2007 indicated no evidence of numbness, weakness or paresthesias of the legs (AR 15; 321). The ALJ found that Plaintiff consistently reported an improvement in her back pain (AR 15; 307; 319), Dr. Walker noted Plaintiff's pain was 70 percent improved in April 2008 (AR 15; 301), and between August 25, 2008 and December 3, 2008, Plaintiff reported her pain was 80 percent improved (AR 15-16; 404). When seen by Dr. Walker on April 22, 2009, the ALJ observed that Plaintiff exhibited no signs of apparent distress, and her physical examination revealed only tenderness to palpation of her lower back (AR 16; 438). While Plaintiff did exhibit positive straight leg raise testing intermittently (AR 313; 438; 441; 450), she walked without an assistive device, she generally had a normal gait, and she displayed good mobility in all her extremities (AR 301; 307; 318; 327; 396; 415; 438; 441). Finally, substantial evidence supports the ALJ's conclusion that Plaintiff did not meet the criteria for Listing 1.04(B) or Listing 1.04(C). There is no diagnosis of spinal arachnoiditis, and the record reflects that Plaintiff had the ability to ambulate effectively (AR 301; 307; 318; 327; 396; 415), even describing herself as an "avid walker" (AR 313).[2]

---

[2] In this case the ALJ did not address a specific Listing, but as previously mentioned, merely stated: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 4041525 and 404.1526). No treating or examining physician has either offered an opinion or reported findings of listing level severity." (AR 12). This conclusory statement arguably falls short of the requirement enunciated in *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3rd Cir. 2000), that an ALJ's conclusory statement that an impairment did not match or is not equivalent to a listed impairment is insufficient. However, in *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3rd Cir. 2004), the Third Circuit held that the failure of an ALJ to analyze a specific listed impairment did not require a remand as long as the ALJ's decision, when read as a whole, showed that the ALJ considered the appropriate facts when deciding that a claimant did not meet a Listing. *See also Scuderi v. Comm'r of Soc. Sec.*, 302 Fed. Appx. 88, 90 (3rd Cir. 2008) (ALJ not required to specifically mention any listed impairment provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing); *Lopez v. Comm'r of Soc. Sec.*, 270 Fed. Appx. 119, 122 (3rd Cir. 2008) (ALJ's failure to discuss specific Listing was not reversible error under *Jones* because the ALJ "analyzed all the probative evidence and explained his decision sufficiently to permit meaningful judicial review."); *Klangwald v. Comm'r of Soc. Sec.*, 269 Fed. Appx. 202, 204 (3rd Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."); *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3rd Cir. 2005) (holding that ALJ's step three explanation was adequate where the ALJ "clearly and fully evaluated and explained the medical evidence set forth in the record."). Here, given the ALJ's thorough review of the medical evidence as it relates to the Listing, and in light of the above cases, any "error" in his step three analysis is harmless and no remand is necessary. *See Rivera v. Comm'r of Soc. Sec.*, 164 Fed. Appx. 260, 263 (3rd Cir. 2006) (affirming the ALJ's

Plaintiff's argument that she met criteria for Listing 12.04 (Affective Disorders) fares no better. Again, Plaintiff does not point to any evidence of record to support her contention that she met the requirements of this Listing. The ALJ did not, however, reach step three of the evaluation process because he concluded that Plaintiff's depression was not a "severe" impairment at step two. Therefore, the issue is whether substantial evidence supports this finding.

An impairment is severe if it "significantly limits [the individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are "the abilities and aptitudes to do most jobs." 20 C.F.R. § 404.1521(b). Examples of these mental abilities include understanding, carrying out and remembering simple instructions; the use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(3)-(6). A non-severe impairment is a "slight abnormality … which would have no more than a minimal effect on an individual's ability to work," irrespective of age, education or work experience. *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987).

Here, the ALJ found that Plaintiff had only mild restrictions of activities of daily living; mild difficulties in social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of an extended duration (AR 11-12). I find substantial evidence supports the ALJ's conclusions in this regard. Plaintiff testified to a wide variety of daily activities, including the performance of household chores, such as folding laundry, cooking, washing dishes, running the vacuum cleaner and grocery shopping (AR 43-44). Plaintiff further testified that she read, watched television, quilted and enjoyed crossword puzzles (AR 46). In terms of her social functioning, Plaintiff testified that she had a "good social life" and gave "cooking seminars" to her daughter's girl scout troop (AR 46-47), and there was no evidence of an inability to get along with supervisors or co-workers. With respect to her ability to maintain concentration, persistence or pace, Plaintiff specifically denied suffering from

---

conclusory step three analysis finding that any error was "harmless" in light of the abundant evidence supporting the ALJ's finding); *White v. Astrue*, 2011 WL 463058 at *9 n.1 (D.N.J. 2011) (holding that even if the court concluded that the ALJ's step three discussion was conclusory, "such statement would be harmless in light of the record.").

any difficulties in these areas (AR 445; 449), and mental status examinations consistently revealed that her affect and mood were normal, she was alert, oriented and cooperative, she was not suicidal or homicidal, and her attention span, concentration and judgment were normal (AR 446; 450). Finally, the record is devoid of any episodes of decompensation. Plaintiff conceded that medication resolved her depressive symptoms and acknowledged that it was her physical impairments that precluded her from working (AR 33; 41). In light of this evidence, the ALJ properly concluded that Plaintiff did not have a severe mental impairment.

Plaintiff next claims that the ALJ erred in concluding that no treating or examining physician ever reported any sustaining disabling limitations or restricted Plaintiff from working in light of Ms. Pifer's opinion dated August 6, 2009 stating that she was "permanently disabled." *See* [ECF No. 12] Plaintiff's Brief pp. 8-9. However, since Ms. Pifer is a physicians' assistant and not a physician, the ALJ's finding in this regard was accurate.[3]

Plaintiff also challenges the ALJ's credibility determination. An ALJ must give serious consideration to a claimant's subjective complaints of pain, even when these complaints are not completely supported by objective evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993). There must be medical signs and laboratory findings that demonstrate the existence of a medical impairment that could reasonably be expected to produce the pain alleged and which, when considered with all of the other evidence, leads to a conclusion that the claimant is disabled. *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3rd Cir. 1984); 20 C.F.R. § 404.1529(a).

In addition to the objective medical evidence, Social Security Ruling ("*SSR*") 96-7p and the regulations provide that the ALJ should consider other factors, such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.R.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2. Finally, the ALJ as the finder of fact can reject, partially or fully, subjective complaints if

---

[3] The ALJ's refusal to have afforded Ms. Pifer's opinion any weight is independently supportable on the basis that it lacked *any* explanation. *See* 20 C.F.R. § 404.1527(d)(3) (stating that "[t]he better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion") (emphasis added); *Anderson v. Astrue*, 2011 WL 2551550 at *3 (M.D.Pa. 2011) (same).

15

he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

Here, the ALJ considered the subjective complaints of Plaintiff and determined that, although her medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC assessment (AR 13). The ALJ's decision reflects that in assessing Plaintiff's credibility, the ALJ considered the objective medical evidence, the medical opinions, and Plaintiff's own recitation of her daily activities (AR 13-16). I conclude that substantial evidence supports the ALJ's credibility determination.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment will be denied and Defendant's motion for summary judgment will be granted. An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARON A. PROPER,           )
                            )
       Plaintiff,     )     Civil Action No. 10-238 Erie
                            )
  v.                        )
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security, )
                            )
       Defendant.     )

## ORDER

AND NOW, this 7th day of November, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [ECF. No. 11] is DENIED, and Defendant's Motion for Summary Judgment [ECF No. 13] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Sharon A. Proper.

The clerk is directed to mark the case closed.

                                                s/ Sean J. McLaughlin
                                                 United States District Judge

cm:    All parties of record